IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARTHA ELSHOLTZ | § | |
| | § | |
| VS. | § | ACTION NO. 4:05-CV-487-Y |
| | § | |
| TASER INTERNATIONAL, INC. | § | |

<u>ORDER GRANTING MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT</u>

  Pending before the Court is Defendant's Motion for Summary Judgment [document number 94]. Also pending before the Court are Defendant's Objections to Plaintiff's Summary-Judgment Response Evidence and Motion to Strike [document number 117]. After consideration of these motions, the related briefs, the evidence highlighted therein, and the applicable law, the Court concludes that both motions should be GRANTED.

  This case arises out of the fatal shooting of plaintiff Martha Elsholtz's adult son, Gary, by Fort Worth Police Department ("FWPD") officer Nestor Martinez on December 7, 2003. On that date, Elsholtz called the police to her home due to a disturbance that was being caused by Gary, who was mentally ill and off his medications, hoping that the police would assist her in taking Gary to the hospital for treatment. This was not the first time Elsholtz had been forced to call the police to her home due to her son's behavior.[1] When police arrived on this particular occasion, however, Gary grabbed a steak

---

[1] Indeed, Martinez testified that FWPD officers had been called to the home for domestic disputes on fifteen prior occasions.

knife from the kitchen and barricaded himself in a bedroom.  FWPD lieutenant Scott Conn decided to force the bedroom door open and, if necessary, attempt to subdue Gary with his taser, a M26 taser designed by defendant Taser International, Inc. ("TII").  Conn told officer Martinez to cover him with Martinez's firearm while he was attempting to subdue Gary in case something went wrong.  When Conn forced the bedroom door open, Gary rose from the bed with the knife in his hand.  As a result, Conn pointed his M26 taser at Gary's chest.  When Gary saw the red laser beam on his chest, he said, "'What are you going to do, shoot me?".  (Elsholtz's App. [doc. 59-7] at 31.) Conn fired the taser, but it did not deploy.  Conn fired the taser a second time, but it again failed to deploy.  While Conn was attempting to determine what was wrong with the taser, Gary came toward him with the knife.  Martinez told Gary to put the knife down, but when Gary failed to do so and continued to approach Conn, Martinez fatally shot Gary.

Elsholtz brought this suit against TII claiming strict products liability, negligence, breach of implied and express warranties, and fraudulent concealment.  Elsholtz contends that Conn's M26 taser malfunctioned because of a problem with the nickel metal hydride ("NiMH") rechargeable battery being used in the taser.  Specifically, Elsholtz contends that the M26 taser contained a design defect because the battery-indicator light did not work with NiMH batteries. Elsholtz also contends that the battery charger TII designed to use with the M26 taser's NiMH battery was designed defectively because it did not maintain the battery at a full charge, even though the

charger indicated that the battery was fully charged. Elsholtz also claims that TII is strictly liable for or engaged in negligence in the manner in which it marketed the taser and battery charger because it failed to give sufficient warnings that the M26 taser's battery-indicator light would not work with NiMH batteries or that the battery charger would not fully charge the NiMH battery.[2] Elsholtz further contends that TII breached express warranties and the implied warranty of merchantability by designing and marketing the charger and taser in unreasonably dangerous conditions. Finally, Elsholtz claims that TII engaged in fraudulent concealment by failing to disclose all of the known material risks of the M26 taser when outfitted with rechargeable batteries.

TII's motion to strike seeks relief regarding one of Elsholtz's expert witnesses, Stanley Buchanan, an electrical engineer.[3] Buchanan's report contends that the NiMH battery did not fully charge or maintain its charge while on TII's battery charger, which caused

---

[2] Elsholtz's amended complaint also asserts that TII is strictly liable for or engaged in negligence in the manufacture of the M26 taser and its battery-charging system, but she has apparently abandoned that claim. See Elsholtz's Resp. to TII's Mot. for Summ. J. at 13 ("[Elsholtz] asserts that TII is liable for the defective design and marketing of the Taser M-26 and Taser battery charger products.")

[3] The Court concludes that the objections included with the motion to strike should be sustained to the extent TII objects to averments made in the affidavit of Elsholtz's expert witness, Stanley Buchanan, regarding comments made by Conn during a conversation Buchanan had with Conn. Those comments are clearly hearsay when offered through Buchanan. The motion is denied, however, regarding the objections to Noonkester's affidavit. TII's global objection to Noonkester's affidavit does not adequately demonstrate that the entire affidavit is, as TII contends, a sham or conclusory.

the failure of Conn's M26 taser to deploy. TII objects to Buchanan's proposed testimony and report on a number of grounds, one of which is that his testimony is not reliable because his methodology is not disclosed. See TII's Objs. to Elsholtz's Mot. Summ. J. Resp. Evid. [doc. 117] at 2. Although no brief was submitted in support of the motion to strike, the Court presumes this to be an objection under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and its progeny. In accordance with those authorities, testimony from an expert witness may only be admitted if the court, acting as a gatekeeper, concludes the testimony "is the product of reliable principals and methods" that have been applied "reliably to the facts of the case." FED. R. EVID. 702(2) & (3); *see also Daubert*, 509 U.S. at 592-93 (courts must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). The burden of proof in this regard is on the proponent of the testimony:

> the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient. . . . The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

After thorough review of Buchanan's report and affidavit, the

Court concludes that Elsholtz has failed to adequately demonstrate that Buchanan's proposed testimony is reliable.  A large impediment to finding Buchanan's proposed testimony admissible is the fact that the Court has had to struggle to make sense of his report.  Buchanan apparently did not write the report with the reader in mind, particularly one uneducated in the area on which he opines.[4]  Furthermore, he cites to documents that have not, at least as best as the Court can tell, been included in Elsholtz's appendix and/or highlighted in Elsholtz's brief in response to the motion to strike.[5]

Most problematic, however, is the fact that although Buchanan

---

[4] For example: "Investigation of the Taser schematic for the battery charger and comparison with the TI data sheet for the bq2004H further shows that the resistor combination of R22 and R24 are not designed properly and set according to specifications and design equations in Unitrode/TI data sheet for the bq2004H."  (Elsholtz's App. [doc. 60-3] at 81.)

[5] For example, Buchanan contends that Defendant's expert, Max Nerheim, "has made several significant misleading and/or incorrect statements concerning the Taser battery charger operation," including the fact that "he circles 'C divided by 32' as top off charge."  (Elsholtz's App. [doc. 60-3] at 80.)  In support of that proposition, Buchanan cites to "Exhibit 68."  (*Id.*)  If the "[e]xhibit 68" to which Buchanan refers has been included in the parties' appendices, Elsholtz has failed to specifically point it out to the Court.  Similarly, Buchanan cites to the "Taser schematic of their battery charger," (*id.*), for support for his proposition that Nerheim's statements are erroneous; but Elsholtz has failed to specifically point the Court to that document as well.  "Judges are not like pigs, hunting for truffles buried in briefs."  *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

contends that he tested two of TII's battery chargers, he wholly fails to provide any details regarding those tests.[6] This Court simply cannot determine whether an expert's opinions are reliable when he fails to provide any details regarding the methodology he used to conduct the tests that give rise to those opinions.[7] Regarding his methodology, Buchanan's report states as follows:

> I subscribe to the scientific method of factual investigation. I have previously been trained to properly utilize equipment pertinent to an electrical engineer. I have been previously trained and educated in the use of the essential testing equipment to verify my scientific observations to support my conclusions and opinions. I have done no less in this instance.

(Elsholtz's App. [doc. 60-3] at 80.) Buchanan's *ipse dixit* that he has engaged in scientific methodology using unidentified electrical engineering equipment does not, however, demonstrate that his opinions are reliable.

And, Elsholtz's response to the motion does little to aid the

---

[6]For example, Buchanan's report states in conclusory fashion that "[t]he 3 mA trickle charge of the Taser battery charge[r]s is also a number measured by myself on two (2) separate Taser chargers, which I tested." (Elsholtz's App. [doc. 60-3] at 80.)

[7]And, at least some of the details Buchanan provides about his assumptions lead the Court to question the reliability of his opinions. Buchanan's report indicates that he relied on Energizer's alleged "published self-discharge (temperature effects) characteristics." (Pls.' App. [doc. 60-3] at 79.) He contends those published characteristics "show that approximately 40 percent of the full 100% capacity of the battery will be lost in 20 days at a temperature of 40ºC (104ºF)," a temperature he later characterizes as a "slightly warm condition." (*Id.*) The Court generally does not consider 104 degrees Farenheit as only 'slightly' warm and suspects that such heat has rarely, if ever, been experienced in Texas in December. In any event, Elsholtz has certainly not demonstrated that it was anywhere close to 104 degrees in Conn's vehicle on or immediately prior to December 7, 2003, the date Gary was fatally shot.

Court's understanding of Buchanan's proposed testimony. Initially, Elsholtz wholly misplaces the burden of proof on the issue:

> [TII] offers no evidence that Mr. Buchanan's test results are inaccurate, and does not provide any scientific materials or evidence to indicate Mr. Buchanan's testing methodologies were in any manner in error. [TII] fails to cite this Court to a single article, document, or text indicating that Mr. Buchanan's methods are incorrect."

(Elsholtz's Resp. to TII's Objs. and Mot. to Strike at 3.) Of course, had TII presented such information, that certainly would have been compelling. But, it is not TII's burden to do so; rather, it is Elsholtz's burden to show that her expert's methodology is reliable and has been reliably applied to the facts of the case.

Elsholtz has failed to carry this burden. Her response to TII's motion to strike contains little more than conclusory assurances that her expert is worthy of confidence. Elsholtz's response contends that "Buchanan used specific empirical scientific measuring equipment[] that is not subject to bias." (*Id*. at 4.) Her response repeatedly makes similar claims,[8] but she never actually explains what equipment Buchanan used, why or how it was used, and what the precise results of his tests were. Because the Court cannot conclude that Buchanan's testimony is the product of reliable principles and

---

[8] See, for example, Elsholtz's response at 4 ("[t]he tests performed used scientific methodologies and scientific equipment which provided unbiased empirical data," and "[w]hat is determinative is the unbiased empirical data obtained from [Buchanan's] objective testing of the M-26 Taser used in this incident"); at 5 {"[t]he scientifically obtained unbiased empirical data demonstrates that . . . ."); at 6 ("Buchanan's opinions are primarily founded upon the unbiased empirical data obtained from the scientific testing that he performed on the equipment.").

methods that have been applied reliably to the facts of the case, his testimony must be excluded. As a result, Elsholtz's claims concerning the battery charger fail because Elsholtz has presented no other evidence that the charger was defective.

As for the taser's battery-indicator light, TII admits that the light did not function properly with NiMH batteries. Elsholtz contends that this condition--a battery-indicator light that did not work with the TII-approved NiMH batteries--constituted a defect in TII's taser. In order to prove that a product's design was defective, however, a plaintiff must show that a safer alternative design existed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 (a)(1) (Vernon 2005). To prove that a safer alternative design existed, a plaintiff must show that the proposed alternative "was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge." *Id.* § 82.005 (b)(2).

In support of her contention that a safer alternative design was available at the time the M26 taser was manufactured, Elsholtz relies on Buchanan's affidavit. Buchanan states that "[a]t the time of the design and manufacture of the M26 in question, battery level indicators, which functioned properly with NiMH batteries, existed." (Elsholtz's App. [doc. 77] at 188.) Buchanan then refers to two battery indicators from Texas Instruments and quotes the attributes of these batteries as listed on Texas Instrument's website, presumably as that site existed on the date his affidavit was signed--August 21, 2006. There is no specific, nonconclusory evidence demonstrating

that these indicators were available on the date the M26 used by Conn was manufactured or that they could have safely and effectively been used with that device.[9] As a result, Elsholtz's design-defect claims regarding the battery-indicator light also fail.

TII is entitled to a summary judgment on Elsholtz's defective-marketing claims as well. "'A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous.'" *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir. 2001) (quoting *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549-50 (Tex. App.--San Antonio 2001, no writ). To sustain such a claim, a plaintiff must prove: "(1) that there was either an inherent risk associated with use of the [product] or a risk that might arise from a use that was intended or reasonably anticipated at the time of the sale; (2) that [the manufacturer] either knew or should have foreseen the risk of harm; (3) that [the manufacturer] failed to provide any warning or failed to provide an adequate warning of the danger when the [product] was sold; (4) that [the manufacturer's] failure to warn rendered the [product] unreasonably dangerous; and (5) that [the manufacturer's] failure to warn was the producing cause of [the plaintiff's] injuries." *Id.* Even assuming the M26 contained a foreseeable risk of harm, Elsholtz has failed

---

[9]Buchanan avers that use of these indicators on the M26 with NiMH batteries "would have been . . . feasible," (Elsholtz's App. [doc. 77] at 189), but he does not elaborate.

to present any evidence tending to suggest that TII failed to issue appropriate warnings about that risk. Indeed, all evidence suggests the contrary. TII issued training bulletins warning users that "[t]he battery indicator is not compatible with NiMH batteries and will not function properly," (TII's App. [doc. 96] at 95), and provided instructions about how to properly test the NiMH's charge. Similar warnings and instructions were provided in the M26 taser's training manual, including the warning that "BATTERY FAILURES WITH RECHARGEABLE BATTERIES IN OLDER TASERs HAVE RESULTED IN FATALITIES BECAUSE OFFICERS HAD TO USE LETHAL FORCE." (*Id.* at 110 & 115.) Conn's FWPD training officer testified that TII advised him that the indicator light might not work properly with NiMH batteries, and that based on his training, Conn should have known that as well. (*Id.* at 25-26, 28.) Elsholtz has not presented any evidence suggesting that TII failed to issue adequate warnings of the battery-indicator light's failure to properly work with NiMH batteries, and thus her marketing-defect claims fail.

Finally, Elsholtz fails to address her breach-of-warranty and fraudulent-concealment claims. As noted in TII's briefs, Elsholtz's implied-warranty-of-merchantability claim fails because she has not presented competent evidence of a defect in either the charger or the taser. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W. 2d 442, 444 (Tex. 1989) ("proof of a defect is required in an action for breach of implied warranty of merchantability"). Her express-warranty claim is unavailing inasmuch as she was not the purchaser of TII's product, and therefore no privity exist. Privity is required for an express-warranty claim. *See Lujan v. Tampo Mfg. Co., Inc.*, 825

ORDER GRANTING MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT - Page 10
TRM/chr

S.W. 2d 505, 511 (Tex. App.--El Paso 1992, no writ); *Tex. Processed Plastics, Inc. v. Gray Enters., Inc.*, 592 S.W. 2d 412, 415 (Tex. Civ. App.--Tyler 1979, no writ).  And, with regard to Elsholtz's "fraudulent-concealment" claim,[10] she simply has failed to present any evidence tending to demonstrate that TII engaged in any material misrepresentations.  *See Bradford v. Vento*, 48 S.W. 3d 749, 754 (Tex. 2001)(noting that "[f]raud occurs when . . . a party makes a material misrepresentation").

As a result, TII's motion to strike Buchanan's testimony is granted, and summary judgment is granted in TII's favor on all of Elsholtz's claims.

SIGNED September 25, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[10]As TII notes, "[f]raudulent concealment is an equitable doctrine that, when properly invoked, estops a defendant from relying on the statute of limitations as an affirmative defense." *Casey v. Meth. Hosp.*, 907 S.W. 2d 898, 903 (Tex. App.--Houston [1st Dist.] 1995, no writ).  TII thus moved for summary judgment to the extent Elsholtz asserts a common-law fraud claim.  *See* TII's Mot. Summ. J. at 24; *Kawecki v. Int'l Bank of Commerce*, No. 14-01-01025-CV, 2003 WL 21782345, at *1, n.3 (Tex. App.--Houston [14th Dist.] 2003, no writ).